In the Matter of BIG "B" AUTO SALES, Bankrupt.
No. 11239.

United States District Court
W. D. Louisiana,
Shreveport Division.
March 24, 1965.

Herbert C. Harrison, Harrison & Brown, Shreveport, La., For A Creditor, Tri-State Finance Corp.

John Paul Woodley, May & Woodley, Shreveport, La., for the trustee.

BEN C. DAWKINS, Jr., Chief Judge.

In this matter the Trustee in Bankruptcy seeks to have declared void ten floor plan chattel mortgages executed by the bankrupt in favor of Tri-State Finance Corporation (Tri-State). The ten mortgages purport to affect nineteen automobiles owned by the bankrupt, which have been sold by the Trustee. The Referee ruled that the mortgages were invalid and unenforceable, from which ruling this petition for review is taken.

An involuntary petition was filed against the bankrupt September 11, 1962. The chattel mortgages were executed at various times between May 31, 1962, and August 7, 1962. The mortgages covering five of the cars were executed July 27, the mortgage covering one car was executed August 6, and those covering six cars were executed August 7. The mortgages covering the remaining seven cars were executed prior to July 27. They were given to secure cash loans received by the bankrupt from Tri-State, and each loan was received by the bankrupt on the date the promissory note and chattel mortgage were executed.

LSA–R.S. 32:710(B) (1950) provides that a chattel mortgage given to secure a floor plan loan shall be effective against third persons as of the date of its execution, if it is entered in the register of floor plan mortgages by the Motor Vehicle Commissioner within fifteen days after its execution. If this is not done, it shall become effective against third persons as of the time it actually is entered in the register of floor plan mortgages. See also LSA–R.S. 32:706 (1950).

All of the chattel mortgages in question were recorded by the Louisiana Motor Vehicle Commissioner in the register of floor plan mortgages August 28, 1962, more than 15 days after their execution. However, Tri-State claims that the mortgages were mailed to the Commissioner on August 10, 1962, or within 15 days after execution of the mortgage covering twelve of the cars, but that due to a clerical mistake the mortgages were not then recorded but were returned to Tri-State for correction. Only after the corrections were made and the mortgages again were mailed to the Commissioner were they duly recorded.

The Trustee contends that the mortgages are voidable preferences under Section 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a.

Section 96, sub. a(1) defines a preference as follows:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Under 11 U.S.C.A. § 96, sub. a(2) [1] a transfer of movable property is deemed to have been made at the time when it became so far perfected that no subsequent lien on the property can become superior to the rights of the transferee. The time when a transfer becomes so perfected is governed by § 96, sub. a(7) which provides that a transfer will be considered perfected as of the date of its execution, if it is recorded within 21 days thereafter, unless a shorter time is

---

[1] "(2) For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. * * *"

provided by state law. If a shorter time is provided by the law of the state, a transfer recorded within that period is considered perfected as of the date of its execution. If it is recorded after that period, it is perfected as of the date of its recordation.

■ As we have already pointed out, LSA–R.S. 32:706 and 710(B) provide a fifteen day period in which a mortgage must be recorded in order for it to have effect against third persons from the date of its execution. None of the mortgages in question here were recorded within that fifteen day period. Under the plain wording of LSA–R.S. 32:706 and 710(B) these mortgages were perfected against third persons upon the date they were entered on the register of floor plan mortgages, August 28, 1962, rather than from the date of their execution.

Tri-State contends that the mortgages are not preferences because they were not given on account of an antecedent debt; that since the loans were made at the same time the mortgages were executed, the debt was simultaneous rather than antecedent to the mortgages.

■ It is well settled, however, that if a transfer made for a contemporaneous consideration is not perfected at once or within the time period allowed by Section 96, sub. a(7)—in this case 15 days under Louisiana law—the consideration will be considered antecedent to the delayed effective date of the transfer. Corn Exchange National Bank & Trust Co. v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943); 3 Collier, Bankruptcy ¶ 60.19, at 847; ¶ 60.39 [4], at 962–964. Therefore, since the

mortgages here were not recorded within 15 days after their execution, the promissory notes they purport to secure are antecedent to the perfection of the mortgages.

■ It appears that all the elements of a preference are met by the mortgages in this case. The mortgages fall within the definition of a transfer (11 U.S.C.A § 1(30)),[2] and they were given to a creditor on account of an antecedent debt. The transfers are considered to have been made when they were perfected as against third persons, August 28, 1962, which was within four months of the filing of the involuntary petition against the bankrupt. It is clear from the record that if the Trustee is unsuccessful in voiding the mortgages, Tri-State will receive a greater percentage of its debt than will the other ordinary creditors. It is also clear that the bankrupt was insolvent on August 28, 1962, when the mortgages were perfected. Therefore, the mortgages were preferences as defined by Section 96, sub. a(1).

■ Section 96, sub. b provides that a preference may be voided by the Trustee if the creditor receiving it knew or had reasonable cause to believe that the debtor was insolvent at the time the transfer was made.[3] In his findings of fact the Referee held that Tri-State, through its President and agents, had knowledge of facts that would lead a reasonable man to the conclusion that the bankrupt was insolvent on August 28, 1962. Under General Order in Bankruptcy 47 that finding is entitled to acceptance in this Court unless it is clearly erroneous. We think it is correct.

---

2. 11 U.S.C.A. § 1(30):
   "(30) 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor[.]"

3. 11 U.S.C.A. § 96, sub. b:
   "Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. * * *"

For these reasons the decision of the Referee that Tri-State Finance Company has no lien upon the property of the bankrupt and that Tri-State should participate in the division as an ordinary creditor is affirmed. An appropriate decree, approved as to form by counsel for Tri-State, should be prepared and presented by counsel for the Trustee.